We move to the second case this morning. Rose Markakos v. Medicredit. Okay, Mr. Edelman, Mr. Hardy. Mr. Edelman, you may proceed. May it please the court, Daniel Edelman for Ms. Markakos. The first issue I'd like to address is standing. About ten days ago, the Northern District, in the Tataru v. RGS case, addressed, under this court's recent decisions, the question of standing on what appears to be a virtually identical case. The allegation was that the name of the creditor was not disclosed in a coherent manner. It may, in fact, be the same sort of error as was involved in this case. We don't know because Medicredit has never explained what Northwest Community 2 NDS is. Is it a real entity? Is it a misnomer or misdescription for some other entity? Northwest Community 2 NDS, like the FNB Omaha 2 involved in the RGS case, cannot be found anywhere. And the question is, did the debtor in the RGS case have standing to sue for misdisclosure of the creditor, current creditor? And Judge Tharp said yes, stating that when you get a collection demand, you have to make a decision. Do you respond? And if so, what do you do? And the debtor needs to know how much they owe and to whom, because they must decide to do something about the debt, dispute, pay, retain a lawyer, among other things. So knowing the identity of the creditor and whether that creditor in fact exists is like knowing how much one owes, central to a consumer being able to intelligently respond to an effort to collect a debt. Without that information, the consumer or consumer's lawyer is forced to take action based on imperfect and inaccurate information. In this case, is Northwest Community 2 NDS a real entity at all? There are many cases of scammers getting debts into the system. Obviously, if you can't find Northwest Community 2 NDS anywhere, that possibility raises its head. And obviously, you would not advise a client to pay a scammer. If it is a real entity and what we're dealing with is a misdescription like was involved in the RGS case, what is it? Is the debt still in the hands of Northwest Community Hospital? If it isn't Northwest Community Hospital, but some sort of debt-buying entity, that raises further questions. Is the debt-buying entity legally authorized to collect debts from Illinois residents? Illinois has licensing requirements. Many other states do. You can't find anything under Northwest Community 2 NDS, but that raises the question of, is the properly identified entity someone authorized to collect? Do they have an assignment? Illinois has specific assignment requirements under certain circumstances. You have no idea, without knowing who the current owner of the debt is, whether that's satisfied. In addition, this is not a credit card debt like was involved in RGS. It's a medical bill. Consumer doesn't contract for specific goods or services to be provided for a specific price. Consumer or a family member arrives at a hospital or an emergency room, thereafter gets a bill. A very large proportion of medical and hospital bills involve overcharges or excessive charges, somewhere around 50 to 80%. So, the question then is, can the person sending this bill, or the owner of the debt, prove anything about it? If it's a debt buyer and the legal standard is the reasonable value of medically necessary services, it isn't likely. On the other hand, if what we're dealing with is a misnomer, misdescription of an original creditor, then it is entirely possible. And the advice one would give to a consumer under those circumstances is quite different. Same thing applies to the amount of the debt. The initial amount claimed was $1,830 in MediCredit's initial letter. That might warrant effort that the debt of $400, which was the second amount stated, might not. In this case, Ms. Marquekos consulted an attorney who was a family member. But whether the attorney would do the same thing for $400 is a different matter. At some point, a debt is going to be small enough so that if you're not dealing with an outright scammer, you may want to pay it for its reasonable value. So, in all of these cases, accurate information about who the owner of the debt is, the current owner of the debt, and what the amount of the debt is, is critical. This court recognized in the Bazille case that information of injury can amount to a concrete injury. And it doesn't even have to be a definite injury. It can be a risk of harm. The question here is MediCredit argues that under this court's decisions, it's necessary that a plaintiff allege and prove how she would have acted differently with accurate information, a somewhat intangible proposition. In fact, this court's decisions do not require that. In the Compass v. Bryant case, the plaintiff was specifically not required to allege that had she been given proper disclosures, she would not have consented to furnish her fingerprint for identification purposes to the defendant. She simply had to allege that she was required to make a decision concerning the use of her biometric information without the information which Illinois requires to be provided in such a case. Similarly, in the Robertson case, Robertson v. Allied, involving a background check report, this court specifically held that it was not necessary that the plaintiff allege either that the background check report was erroneous, or that even if the plaintiff admitted to doing the deeds alleged in the background check report, she would have been able to successfully persuade a prospective employer to give her a job anyway. It was sufficient that the plaintiff be deprived of the opportunity to review the background check report before it was used to make a decision about her and to address the matter with the prospective employer if she wished to. In the subsequent Crabtree decision, Crabtree v. Experian, this court described Robertson as holding that the plaintiff had lost the benefit of her interest in responding to information in her background report, even if the information was accurate, and she would have been unable to convince the prospective employer to honor the original offer. So in all of these cases, standing was found without having to prove that a different course of action would have been followed had required information been furnished. It was sufficient to allege that there was a requirement of information that being furnished and that a decision had to be made in the absence of that information. So I would submit that standing does exist in this type of case and that Judge Tharp's decision in RGS is correct. With respect to the merits, MediCredit clearly failed to coherently disclose the amount of the debt. It sent one letter demanding $1830. It sent a later letter demanding $407. The two are irreconcilable. If they were in the same letter, there would clearly be a violation. Those are the facts of each case. The fact that they are in two letters in a series of correspondence does not mean that it's not a violation. The burden is not on us to identify which of these numbers or perhaps both of them is wrong. Rather, MediCredit is required to disclose in a coherent, reasonable fashion something that a consumer could understand what the number is. And that it did not do. The one thing that is clear is that a plaintiff, a lawyer, anyone reading these letters would not understand what the amount of the claim is. Same thing may be said about the identification of the current creditor. The district judge dismissed this claim on grounds that MediCredit doesn't even attempt to defend, namely that the current creditor in 6092G is the original creditor. It clearly isn't. The creditor to whom the debt is owed, the current creditor, is a subset of creditors and is the one who currently owns the debt. That was not disclosed. We do not disclose that by using Northwest Community, the name of the medical provider, and then appending after it a designation to NDS, which suggests that the debt is currently in the hands of somebody other than the medical provider, albeit possibly related to it or a debt buyer, and one which cannot be found anywhere. It was incumbent upon MediCredit to identify a person, either a natural person or, in most cases, a legal entity that currently owns the debt. That it did not do. This aspect of the case is very similar to the RGS case. We frankly do not know whether what we're dealing with is a misdescription of an original creditor, a debt buyer, which may or may not be accurately described because you can't find it anywhere, or what it is. Again, it was incumbent upon MediCredit to provide information in a manner comprehensible to the original, to an unsophisticated consumer. And that it did not do. Unless your honors have some questions, that concludes my remarks. So I'll save the remainder of my time for questions. Thank you, Mr. Edelman. Mr. Hardy? Good morning, your honors, and may it please the court, Ryan Hardy for MediCredit, Incorporated. This case was properly dismissed by the district court without prejudice or lack of subject matter jurisdiction. Ms. Marcacos failed to allege facts supporting her Article 3 standing, despite having three opportunities to file a complaint and despite having the opportunity to submit a declaration asserting the factual basis for her standing. The sole basis that Ms. Marcacos advances here for her standing is a purported informational injury. She would have taken some different action than she took if MediCredit had furnished her with complete and accurate information required under the FDCPA. Now, she didn't allege in her complaint, in any iteration of her complaint, that she would have taken a different action but for the alleged violations. She, thus, didn't allege facts to support her standing. Likewise, her declaration did not describe what she would have done differently, if anything, had she received complete and accurate information. Rather, she alleged only that she was confused, aggravated, and harassed. Ms. Marcacos, therefore, did not show to the district court that she had standing. This court addressed in Gunn v. Thrasher that annoyance and intimidation do not create an injury in facts sufficient to afford standing to an FDCPA plaintiff. This court's opinion in the Burnett case similarly holds that confusion or the engagement of counsel as a result of confusion doesn't create an injury in facts sufficient to afford standing to an FDCPA plaintiff. That leaves the informational injury, and this court addressed that issue in both the Bazille case that my opponent mentioned and in Spooler v. State Collection Services. And the court correctly held that the failure of a debt collector to furnish information required under the FDCPA creates standing only, and this is a quotation, only if it impairs the plaintiff's ability to use that information for a substantive purpose that the statute envisioned. So this court has said that it is necessary for an omission of information or a misstatement of information to impair the plaintiff's ability to do something, that she would have done something differently or could have done something differently had she had correct information. Now, Spooler came to the court following a summary judgment, so it's a little bit different, but the same result obtains. The court observed that the plaintiff failed to advance any reason that the debt collector's failure to furnish information harmed the plaintiff because the record contained no evidence that the omitted information, quote, had any effect on how the schoolers responded to the letters or managed their debts, unquote. In Bazille, the court remanded for an evidentiary hearing, and in that case, it was a little bit different because this court found that the record in the district court was underdeveloped with respect to a factual challenge on standing. And the issue there was whether, in fact, interest was accruing on the debt. The collector said no, and the plaintiff said yes. And the court reasoned that, well, it may be the case that the debtor was harmed as a result of the omission of the fact that that was accruing if, in fact, it was. She might have prioritized other debt. She might have prioritized this debt. The fact was that she might have done something differently. Now, in that case, there was a remand for factual development because the record was underdeveloped. This case is different because the factual record is not underdeveloped. Ms. Marcacos had the opportunity and she took the opportunity to submit a declaration laying out the purported basis for her standing. And those bases actually in the declaration, she didn't even assert harassment or aggravation. She asserted only confusion. And, again, it's clear from this court's recent precedents that confusion standing alone is insufficient to confer standing to an FDCPA plaintiff. So she had the opportunity. She took the opportunity. She still failed to show that she had standing. And I note parenthetically that the district court was permitted to dispense with a formal evidentiary hearing on that factual question. Under Rule 43C, the district court was permitted to accept evidence on the affidavits and resolve the motion in that way. There was no request made or oral argument. There's been no challenge made that the district court erred in failing to hold a live evidentiary hearing. I use the term live loosely. We were in the pandemic at that point. But a Zoom evidentiary hearing. There was no request made. So this is not like Bazille where there was an underdeveloped factual record. Here we had an amply developed factual record where Ms. Markakis had a full opportunity to present her basis for standing, and she failed to furnish a proper basis for standing. And that's leaving aside a separate question that I think is equally important, and I don't want to get lost. In Bazille, this court mentioned several times that the complaint may have permitted an inference that the plaintiff was injured by the purported nondisclosure. The court stopped meaningfully short of saying that it did permit that inference. And in fact, the court said that if on remand the plaintiff is able to introduce evidence that she did in fact do something differently, she was in fact harmed by this nondisclosure, then any facial defects in the complaint could be cured by amendment. And I think that's important here, Judge, Your Honor, because in this case, we're not dealing with a situation where there's a question about whether interest was accruing or something like that. We're not dealing with a question of whether she may have prioritized other debts. Certainly she did not pay this debt. She doesn't allege she paid this debt. Instead, the question is, would she have done something differently than she did? And the answer is no. She invoked her rights under the FDCPA. She disputed the debt on substantive grounds, including lack of adequacy of care. I suspect that she would not have. And the allegations of the complaint with the annexed exhibits do not permit an inference otherwise. But what's more? Her alternate course of action that's been suggested is that she would have ignored the letter. And there's been nothing identified to explain how Ms. Marcacos is worse off for having responded to the letter and for having invoked her rights under the FDCPA to require the collector to stop collection than she would have been had she simply ignored the letter. So this is not a situation where the complaint admits of a proper inference of harm. This is not like, say, La Valley, where, you know, in that case, you know, the plaintiff was engaged in litigation with the debt collector and had proper notices been furnished to the plaintiff about her dispute rights. Then in that instance, the plaintiff could have stopped the collection action entirely. You know, that's a situation where an inference is permitted. This is not such a case. That's point one. And point two, you know, in Bazille, there was an explanation that, well, you know, any facial defects in the complaint could be cured. Rule 15 permits liberal amendment of the pleadings. And that's all true and that's all correct. But I think it's important to bear in mind that when the district court disposed of this case, the district court was already on the third iteration of the complaint. And it's not appropriate and the district court would be perfectly correct to decline to permit further amendment. There's no need for three bites at the apple to assert a proper claim and to show the existence of standing, particularly whereas here there's actually been a fourth opportunity in the form of a declaration. That's too much. That's too much. These cases, I don't want to suggest that they're not important cases. Certainly they are. They mean a lot to the people who bring them. I understand that. But these are relatively simple cases that don't warrant three complaints and a declaration to show something so fundamental as the right to access an article three court. Unless the court has questions on the standing issue, I will turn only briefly to the merits, because in my view, the standing issue is clear and it's dispositive on the on the merits. The district court was correct to dismiss for failure to state a claim to the extent it did. And I think the court's opinion properly is read as being a dismissal for lack of subject matter jurisdiction on the creditor identification claim. Ms. Markakos never alleged that the identified creditor wasn't her current creditor. And and that's absolutely what's required to show that there was a violation of the obligation to disclose the identity of the current creditor. She just she just didn't do it. She said she couldn't find the creditor. But there's no requirement in the FDCPA or otherwise that that that the creditor be be registered or domiciled in her home state. The fact of the matter is, it may or may not be. So so that that that allegation was simply insufficient. She needed to allege, but didn't allege that MediCredit, in fact, failed to identify her current creditor. And on the claim of based on the different statements of amounts due, we addressed this at some length in our briefing. And we've raised a variety of issues on that. I don't want to dwell on them too much. But among the issues she never alleged, which if either of the statements was wrong, she never alleged that the difference was material. She never alleged that a competent lawyer would have been misled, among other problems. And it appears as a matter of fact that the amount stated were immaterial because she disputed the entire amount of the debt because, among other things, inadequacy of care. So in that sense, it didn't matter a way if MediCredit told her. And I'm talking about the merits here, not necessarily standing. It wouldn't have mattered a bit if MediCredit had told her she owed one dollar or a million dollars. She would have disputed the debt either way. And by timely doing so, she could have and did secure the FDCPA protections against further collection efforts. So that's our take on the merits. I do want to very briefly address the question that's been raised about whether the dismissal was with or without prejudice. MediCredit certainly agrees with the plaintiff that a dismissal or lack of jurisdiction should be a dismissal without prejudice. And I will acknowledge that the second dismissal order did not clearly state that it was without prejudice. The judgment, though, clearly did. And I think in that respect, the district court's disposition is sufficiently clear that no remand is required on that issue. But if this court disagrees and considers there to be any ambiguity in how the district court disposed of this case, whether it was with prejudice or without prejudice, we don't object to a limited remand solely for the purpose of clarifying that the dismissal was without prejudice for lack of jurisdiction. And unless the court has any questions for me, I will waive the rest of my time. Thank you. Mr. Edelman. Very briefly, Your Honors. The record clearly shows that Ms. Markeko has attempted to dispute the debt through her related attorney. And there's no question that she had to make a decision about what to do with the debt based on imperfect information. Those two facts we submit show standing. Informational injury does not require an allegation or proof that had the full information required been furnished that the decision made would have been a different one. That's Bryant. That's Robertson. The valley, which MediCredit's counsel referred to, does not say that she had that the plaintiff had to allege or prove that had she gotten a notice of debt, that her course of action would have been different. It simply averts to possible courses of action that might have been taken, that would have been logical to take or not, and points to the fact that a decision was made without the consumer being afforded a notice of debt as required. The affidavit or declaration in this case references confusion, but which was relevant under what appeared to be the law prior to this court's recent decisions. But it's quite clear that Ms. Markeko is saying that she does not have the information about who the current creditor is or what the amount of the debt is. You can't be confused if you've been fully informed. Our legal theory with respect to what Northwest Community 2NDS is and why that's not a sufficient statement was advanced in our brief. The district court understood it and erroneously rejected our position on grounds which simply amount to an erroneous view of the merits, but the claim was definitely advanced. We therefore request that the court reverse the decision below. There was sufficient informational injury, and on the merits they did not coherently disclose either the amount of the debt or who the current owner of the debt was. Thank you, Mr. Edelman. Thank you, Mr. Hardy. The case will be taken under advisement, and there will be a 10-minute recess for the next case. Thank you, counsel.